## JONES *et ux. v.* METZGER.

[96 South. 161, No. 23210.]

1. VENDOR AND PURCHASER. *Mutual mistake as to buildings being on land and mistake as to title held to justify rescission.*
   Where ignorant negroes purchasing sixteenth section school land by special warranty deed expected to obtain fee-simple title to knowledge of the vendor, who owned only a leasehold, and both parties mistakenly supposed certain valuable buildings were on the land, there was sufficient ground for rescission.

2. COVENANTS. *The words "warrant specially" is warranty only against those claiming through grantor.*
   The words "warrant specially" in a conveyance is merely a covenant that the grantor and his heirs and representatives warrant the title against the claims of all persons claiming through or under the grantor.

3. DEEDS. *Conveyance with special warranty may be grant of fee-simple title.*
   A conveyance with special warranty may be a grant of a fee-simple title.

APPEAL from chancery court of Wilkinson county.

HON. R. W. CUTRER, Chancellor.

Suit by Willie Jones and wife against August Metzger. From a decree for defendant, complainants appeal. Reversed and remanded.

*David C. Bramlett,* counsel for appellant.

The trouble with the court below, with the greatest respect, is that in addition to a misconception of the law applicable the issues were misconceived, as a glance at the final decree demonstrates to quote a phrase thereof on which the entire decree is based: ". . . And that the covenants in said deed, Exhibit A, have not been breached. . . ."

Regarding the breach of the special warranty *vel non* as one of the vital issues, it is not surprizing that the court below erred. "Experience shows that when a trial judge is wrong in his conception of the issues, or of the principles of law applicable to them, his errors are likely to be many and also to be prejudicial." *Copper Process Co.* v. *Chicago B. & I. Co.*, 8 A. L. R. 1477-1479, 262 Fed. 66.

In *Jackson Naval Stores* v. *Tootle*, 96 Miss. 486, this court held that it being unlawful for the lessee of a sixteenth section, public school land, to sell for commercial purposes the timber standing thereon, the warrant in a sale of such timber by the lessee is broken when made, and an action for the breach at once lies, without hostile assertion of the paramount title.

In this case the sale was not only of the timber but of the land including timber and everything else pertaining thereto, and as the court held in the *Naval Stores case, supra,* if a sixteenth section timber deed is a nullity, surely the deed in the case of the land under the facts and circumstances of this case is a nullity.

Again the court below held in the final decree that the sale of this land was "in good faith." It is elementary in Mississippi that it matters not how good might have been the faith or how honest the mistake, if a mutual material mistake is made and the purchaser does not get what he thought he was getting, the sale will be rescinded. *Brown* v. *Coker,* 129 Miss. 411.

The undisputed testimony in this case shows: First. Appellee, Metzger, is a shrewd, successful merchant and trader in lands. Second. Appellants are uneducated ignorant, hard-working negroes who traded with appellee as their merchant and trusted him and left this entire matter to appellee who had the papers prepared by his attorney and appellants were not represented by an attorney. Third. Appellee, Metzger, executed to appellants a usual land deed, which in addition to being a nullity as hereinbefore shown, is in itself sufficient to mislead appel-

lants, under the facts and circumstances of this case, into believing that they were receiving a *fee-simple* title to the land; and, further, appellants had no knowledge of the legal effect of "warrant specially" or any other information as to land titles. Fourth. Metzger knew when he conveyed appellants the land described in the deed that he did not own the same but that it was school land and the most he had was a lease. Fifth. There is not the slightest suggestion that appellants, prior to or at the time of the purchase, knew that Metzger did not own this land, or that it was school-section land. Sixth. Metzger, prior to or at the time of the purchase, did not tell appellants that he did not own this land, but concealed this fact from appellants and concealed the further fact that all he did own was a lease. Seventh. This entire transaction was to sell—not to lease—land, and in consummating such a transaction to transfer land and the execution of a deed purporting to convey land, under the facts, constitutes a fraudulent misrepresentation on the part of Metzger. Eighth. The residence and barn within the fence which appellee, Metzger, claimed was on the line, are not on the Metzger place but are on the Still place and are not on the land described in the deed executed by Metzger to Appellants; therefore, appellants not only did not acquire the residence and barn in fee as they thought they were buying, but appellants are without even a color of title thereto.

This court has ever jealously guarded the rights of the weak and ignorant as against the shrewd, designing and powerful, and, strange to say, in doing so, in nearly all instances it has been necessary to reverse the lower courts. In a case similar to this wherein an ignorant negro had been overreached, this court said: "When the true situation of the parties is thoroughly understood, the evidence of unfair, if not fraudulent dealing is made manifest upon an inspection of the deeds themselves, and this coupled with other proof in the case, abundantly warrants the

court in setting aside the transaction." *Carter* v. *Eastman Gardner Company,* 95 Miss. 651-655.

Again at page 656: "Be this as it may, this whole transaction is so manifestly unfair and unjust, made between parties standing upon such an unequal footing, showing so clearly that appellants have been overreached, that it must be set aside. The true purpose of the court would be lost sight of if so palpable a wrong could be allowed to go uncorrected."

Suppression of the truth as well as suggestion of falsehood may render a party guilty of fraud, to quote 12 R. C. L. 305: "Fraud may be committed by the suppression of the truth as well as by the suggestion of falsehood and it is equally competent for the court to relieve against it whether it is committed in one way or the other. The one acts negatively, the other positively; both are calculated, in different ways, to produce the same result. The former as well as the latter is a violation of the principles of good faith. It proceeds from the same motives and is attended with the same consequences; and the deception and injury may be as great in the one case as in the other."

In *Parham* v. *Randolph,* 4 Howard (Miss.) 435-451, this court said: "Any intentional misrepresentation or concealment in relation to land, either as to quality or title, by which the purchaser is imposed on, is fraudulent and it is immaterial whether the false representations are intentional or not." *Rimer* v. *Dugan,* 39 Miss. 477; 2 Tucker's Lect., p. 421, 422, citing 1 Brown's Ch. C. (Ves.) 174, 183; 10 Id. 475; 1 Ves. & B. 355; 9 Ves. 21; and see 1 Story Eq., sec. 193; 3 Cranch, 270.

The same doctrine has long been settled in this court. See *Parham* v. *Randolph et al.,* 4 How. 451; *Davidson* v. *Moss,* 5 Id. 684; *Hall* v. *Thompson,* 1 S. & M. 485; *Clopton et al.* v. *Cozart et al.,* 13 Id. 363; *Oswald* v. *McGehee,* 28 Miss. 340; *Lindsey* v. *Lindsey.* 34 Id. 432."

And again at page 483: "That the complainant may resort to equity for relief against the fraud, instead of relying upon his covenant of warranty, is well settled in this

court. *Davidson* v. *Moss,* 4 How. 673; *Parham et al.* v. *Randolph et al.,* 4 Id. 451; *English* v. *Benedict,* 25 Miss. 167."

In *Davis* v. *Heard,* 44 Miss. 50, at page 57 this court said: "The rule of law is, that if a vendor misrepresents a material fact, in relation to title or quantity of an estate, though innocently and under a belief of its truth, or if he conceals any material circumstances which may be calculated to enhance the value of the property in the estimation of the purchaser, a court of equity will rescind the contract."

We also call the court's attention to the cases of *Estell* v. *Myers,* 54 Miss. 174; *Vincent* v. *Corbett,* 94 Miss. 46, 21 L. R. A. (N. S.) 85; *McNeer & Dodd* v. *Norfleet,* 113 Miss. 611.

There is not a jurisdiction or encyclopedia or law authority of any kind to which we could not go for further citations but we see no occasion for further going outside our own court which from its beginning down to and including the 129 Mississippi, *supra,* has passed on the points involved in this record as hereinbefore shown so many times.

Conclusion.   This court has the entire record before it; consequently, we ask this court to reverse the decree and judgment of the court below and to grant the prayer of appellants' bill of complaint namely, that the deed and notes be rescinded and canceled, and judgment be entered against appellee in favor of appellants in the sum of one thousand one hundred dollars with interest; thus placing all the parties hereto *in statu quo* with loss to no one.

*Tucker & Tucker,* for appellee.

There is nothing in this record to show that the appellee had any influence over the appellants or they had any undue confidence in appellee, except the self-serving declaration of appellant Willie Jones; that he had confidence

in appellee and that both of the appellants declare they are ignorant.

This cost of the land to appellee and the sale price to appellants fail to show any overreaching of the appellants in price. In fact there is no attempt by the appellants to prove that this land with improvements did not sell for a fair and just consideration.

The record here fails to show when the lease to this land will expire. The testimony of witnesses E. E. Richardson shows. that the appellants would enjoy the estate for twenty-five or thirty years, Rec. 67, and that the lease was for ninety-nine years. The record also shows that the value of the improvements on the land is about four hundred dollars less than the sale price. The appellants as lessees would have been entitled at the end of the lease to the value of the permanent improvements as a credit on any new lease they may have made with the board of supervisors. Laws of 1918, chapter 252; Hemingway's Code, sub-sections 7530k to 7530m.

As to appellants' fourth assignment of error to-wit: "In decreeing the covenants of said deed were not breached and in basing the decree thereon."

Appellee's special warranty deed covenanted to defend the title to said land against the claims of all persons claiming by, through, or under appellee, his heirs and personal representatives. Nowhere in the record is there any evidence that the covenants of appellee's deed have been broken. Appellants went into possession and occupancy of the land conveyed them, peacefully enjoyed the same until this suit was filed; have not yielded to a superior title; have not been evicted or disposssessed of said land or any part thereof, or deprived of any improvements thereon or threatened with suit, nor has any person ever made any demand upon appellants for the possession of said property, or any part of same, or disputed any fence or boundary line.

Had appellee executed a general warranty deed to this land the same would have been good under this record.

A lease to sixteenth-section school lands for ninety-nine years made in about 1842 to 1850, conveyed the right, title, use, interest and occupation of such lands, subject only to waste, and the lessees can sue as if they were the *fee-simple* owners of the leased premises, except as against the lessors. Laws of 1841, chapter 25; *Lumber Co.* v. *Harrison County,* 89 Miss. 448.

The record in this case fails to show the original lease of the land in controversy and the date of the expiration of same, but this court has repeatedly held that the findings of a court below will not be reversed on facts and evidence left out of the record, and that the actions of the court below will be presumed to be correct as to omitted facts and evidence.

HOLDEN, J., delivered the opinion of the court.

This is a suit by bill to rescind a land sale and to recover the amount paid as part of the purchase money thereon, and also a cross-bill by the seller to foreclose against the purchasers for the balance of the unpaid purchase money. From a decree denying the relief sought by complainants, and granting the prayer for foreclosure for the unpaid purchase money asked for in the cross-bill, the complainants below present this appeal.

The appellee, Metzger, a merchant and trader in lands conveyed to appellants, Willie Jones and his wife, Nellie, two ignorant negroes, about one hundred eighty acres of land by special warranty deed. It was understood and believed by all parties to the transaction that a four-room residence and a barn were located on the land. It is also shown by the record that the appellants believed they were getting a *fee-simple* title to the land, whereas it appears the land was sixteenth section school land, and could not be conveyed in *fee-simple*. The appellee, Metzger, knew it was school land and that he only owned a lease-hold estate therein; and he testified that he did not tell appellants

it was school land, but made the sale knowing the purchaser was expecting to obtain a *fee-simple* title.

The appellants had many business dealings with appellee, and trusted appellee to prepare the papers and depended upon him to convey the kind of title and the quantity of property that it was understood would be conveyed. It also appears in the record without contradiction that the residence and barn which were supposed to be located upon the land, and which the appellants and appellee thought and understood were located on the land were not situated on the land, but were on adjacent land belonging to other parties. The consideration to be paid for the land by appellants was two thousand dollars, one thousand one hundred dollars of which was paid, leaving a balance of nine hundred dollars past due.

The decisive point presented by appellants for reversal is that the appellants, on account of their ignorance and their trust in the appellee, were misled by him into believing that he would convey a *fee-simple* title to them, and not a leasehold, and that there was a mutual material mistake between the parties as to the amount and value of the property to be conveyed and the amount actually conveyed in the deed. That is, the understanding between all parties was that the four-room residence and valuable barn were located on the land, whereas these buildings were not upon the land conveyed, but were on adjoining lands belonging to other parties, and that therefore the sale should be rescinded because of the mutual mistake.

After a careful consideration of the record, and without setting out the testimony in detail, we have reached the conclusion that the appellants' position is well grounded.

The record conclusively shows the appellants were misled in the purchase of the school land by the special warranty deed purporting to convey the *fee-simple* title, and were also misled by the mutual mistake of all parties in that they understood the residence and barn were located upon the land in question, but which was on adjoining

lands owned by other parties.  By the mutual mistake appellants failed to get the land with the buildings on it which they and appellee thought they were getting by the conveyance.

The mutual mistake was material, and no doubt can be considered as a contributing cause moving the appellants in the transaction, and that, had they known they were not to get the buildings, nor a *fee-simple* title to the land, they would not have purchased the land.

Therefore the mutual mistake warrants a rescission of the contract and a return of the money paid by appellants on the purchase price of the land.

The chancellor, it seems, decided the case upon the theory that there was no breach in the warranty of the deed, since it was a special warranty given in good faith; but we do not think the case turns upon that point, but the question is: Was the purchaser misled through mutual mistake as to the buildings being upon the land sold, and whether the seller could convey a *fee-simple* title to the purchasers as they understood they were getting.

The words "warrant specially" in a conveyance is merely a covenant that the grantor and his heirs and representatives warrant the title of the property unto the grantee against the claims of all persons claiming through or under the grantor.  Nevertheless, such a conveyance may be, and is so in this case, a grant of a *fee-simple* title.

The deed here involved conveyed no more than the lease of the school lands, which was not the kind of title the purchasers had the right to believe they were getting; nor did they get the land with the buildings on it as believed were on it by all parties. 12 R. C. L. 305; *Parham* v. *Randolph,* 4 How. 435, 451, 35 Am. Dec. 403; *Rimer* v. *Dugan,* 39 Miss. 477, 77 Am. Dec. 687; *Davis* v. *Heard,* 44 Miss. 50; *Estell* v. *Myers,* 54 Miss. 174; *Vincent* v. *Corbett,* 94 Miss. 46, 47 So. 641, 21 L. R. A. (N. S.) 85; *McNeer* v. *Norfleet,* 113 Miss. 611, 74 So. 577, Ann. Cas. 1918E, 436: *Brown* v. *Coker,* 129 Miss. 411, 92 So. 585.

The decree of the lower court is reversed, and the case remanded for an accounting only and for further proceed-·ings in accord with this opinion.

*Reversed and remanded.*